1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ECHO & RIG SACRAMENTO, LLC,              No. 2:23-cv-00197-DJC-JDP
     individually and on behalf of all others
12   similarly situated,

13              Plaintiff,                      ORDER

14        v.

15   AMGUARD INSURANCE COMPANY,

16              Defendant.

17

18        The present case concerns the fairness of an insurance company collecting pre-

19   COVID-19 premium rates from restaurants and other businesses during the COVID-19

20   pandemic, despite the businesses being closed or operating at a limited capacity for

21   much of 2020.  Plaintiff Echo & Rig, a restaurant in Sacramento, California, brings

22   claims on behalf of itself and others similarly situated alleging that Defendant

23   AmGuard Insurance Company was unjustly enriched by retaining a rate of return that

24   was excessive compared to the businesses' reduced risk exposure, and that

25   Defendant's failure to refund or reassess the businesses' insurance rates was an unfair

26   business practice in violation of the California Unfair Competition Law ("UCL").

27        Defendant has moved to dismiss Plaintiff's claims arguing that Defendant's

28   conduct was protected by the UCL "safe harbor," and that Plaintiff has failed to state a

1

claim for unjust enrichment.  Defendant also requests the Court to, in the alternative,
dismiss Plaintiff's claims under the primary jurisdiction doctrine.

For the following reasons the Court will GRANT in part and DENY in part
Defendant's Motion.

## I.      Background

Plaintiff Echo & Rig is a restaurant in Sacramento, California bringing claims on
behalf of itself and others similarly situated.  (First Am. Compl. ("FAC") (ECF No. 21)
¶¶ 4, 10.)  During the COVID-19 pandemic Plaintiff was forced to close its business
from mid-March 2020 through August 2020.  (*Id.* ¶¶ 4, 20–23.)  It reopened in
September of 2020 in a limited capacity not exceeding 20% of its pre-COVID
operations.  (*Id.*)

During this time, Plaintiff maintained an insurance policy with Defendant
AmGuard Insurance Company.  (*Id.* ¶ 12.) The policy started on November 12, 2019
and ran through November 12, 2020.  (*Id.*)  Despite Plaintiff's business being fully
closed or operating at a limited capacity for most of the policy period, Plaintiff
continued to pay an insurance premium that was based on Plaintiff's normal operating
capacity for the full policy period.  (*Id.* ¶¶ 28–31, 46.)

While the COVID-19 pandemic was ongoing, the California Insurance
Commissioner issued three bulletins notifying property and casualty insurers that the
pandemic related closure of many businesses had caused the projected loss exposure
of these business to be overstated or misclassified.  (*Id.* ¶ 37–43.)  Through the
bulletins, the Insurance Commissioner requested that insurers issue premium refunds
to their insureds by either applying a uniform premium reduction or adjustment, or by
conducting a case-by-case assessment of their insureds' exposure bases.  (*Id.*)  The
bulletins also required insurance companies to report to the Commissioner regarding
the actions they took.  (*Id.* ¶ 40.)  The bulletins applied to the months of March
through June and "any months subsequent to June if the COVID-19 pandemic

2

1    continues to result in projected loss exposures remaining overstated or misclassified."

2    (*Id.* ¶ 41.)

3        In response to these bulletins, Defendant reported to the California

4    Department of Insurance that it "provided refunds of between 15% and 30% to

5    policyholders for [the period between March 15 through May 31, 2020], depending

6    on the line of business and classification, with some exceptions." (*Id.* ¶ 47; ECF No.

7    21-7 at 3.) Defendant also stated that for the months subsequent to June 2020, it

8    undertook a case-by-case reassessment of its insureds' exposure bases based on

9    information provided by policyholders and at the policyholders' requests and issued

10    premium reductions as it saw fit. (FAC ¶ 9; ECF No. 21-7 at 3.)

11        Plaintiff alleges that it was not issued a refund in the first round of refunds

12    provided by Defendant, nor was Plaintiff notified of Defendant's plan to reassess

13    premiums or given an opportunity to provide Defendant with information about its

14    reduced operations and request a reduction. (*Id.* ¶ 48–49.) Plaintiff further alleges

15    that even if it was given the 15% to 30% refund, such a refund would not have

16    adequately compensated Plaintiff for the excess premium it paid. (*Id.* ¶ 48.)

17        Plaintiff brought the present action alleging that Defendant's collection and

18    retention of excessive premiums as a result of Plaintiff's exposure being overstated

19    during the COVID-19 pandemic violates public policy as established in Proposition

20    103 "to protect consumers from arbitrary insurance rates and practices" and "to

21    ensure that insurance is fair, available, and affordable for all Californians." (*Id.* ¶ 34.)

22    Plaintiff claims that Defendant's conduct was an unfair business practice in violation of

23    the UCL, Business and Professions Code section 17200, *et seq.*, and that Defendant

24    was unjustly enriched. (*Id.* at 14–16.)

25        Defendant brought the present Motion to Dismiss Plaintiff's FAC and Plaintiff

26    has opposed the motion. (Mot. (ECF No. 23-1); Opp'n (ECF No. 29).)

27    ////

28    ////

## II.     Legal Standard for Motion to Dismiss

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The Court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

## III.    Discussion

### A.     Unfair Competition Law

Plaintiff claims that Defendant engaged in an unfair business practice prohibited by the UCL by retaining the allegedly excessive premiums paid by Plaintiff during the pandemic, and by failing to reassess Plaintiff's rate.  "The unfair prong of the UCL 'creates a cause of action for a business practice that is unfair even if not proscribed by some other law.'" *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 844 (N.D. Cal. 2022) (quoting *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019)).  Whether conduct is unfair can be determined two ways: (1) by

1   establishing that the conduct offends "some legislatively declared policy" (the

2   "tethering" test) or (2) by weighing the utility of the conduct against the harm to the

3   alleged victim (the "balancing" test).  *Id.* at 844–45 (citing *Lozano v. AT & T Wireless*

4   *Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) and *Davis v. HSBC Bank Nevada, N.A.*,

5   691 F.3d 1152, 1169 (9th Cir. 2012)).  The California Supreme Court rejected the

6   balancing test in favor of the tethering test in the context of competitor suits under the

7   UCL in *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163

8   (1999), but has failed to clarify whether this also applies to consumer suits.  *See*

9   *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 304

10  (2020) (acknowledging split in appellate courts but declining to address whether the

11  tethering test also applies to consumer suits).  In the absence of such guidance, the

12  Ninth Circuit has endorsed the balancing test, but has in practice preferred review

13  under both tests.  *See Lozano*, 504 F.3d at 735 (stating that the two tests are not

14  mutually exclusive); *Davis*, 691 at 1170 (finding that plaintiff failed to state a claim

15  under either prong); *see also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir.

16  2020) (applying both tests to plaintiff's UCL claims).

17          Plaintiff alleges that the Defendant acted unfairly by violating the public policy

18  established under Proposition 103 to limit insurance premiums and rates to a fair rate

19  of return on the risk covered by the policy, and California Insurance Code

20  section 1861.01(a), which states that "[n]o rate shall be approved or remain in effect

21  which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this

22  chapter."  (FAC ¶ 33.)  The rate Plaintiff was charged was based on the risks of

23  Plaintiff's pre-pandemic operations.  Because its business was closed or operating

24  with limited capacity for a large portion of the policy period due to the pandemic, and

25  therefore had lower operating risks than initially contemplated by the parties, Plaintiff

26  alleges the premium was based on overstated risks.  Plaintiff further alleges that

27  although Defendant provided premium refunds to some insureds, Plaintiff did not

28  receive a refund or an explanation as to why it did not receive a refund.  In addition, in

1    its response to the Insurance Commissioner's bulletins, Defendant stated it would

2    undertake a "case-by-case reassessment of exposure bases" but Plaintiff alleges that

3    Defendant failed to "provide any notification, explanation, or opportunity to provide

4    information regarding Plaintiff's reduced operations and entitlement to a refund and

5    reduced premiums."  (*Id.* ¶ 49.)

6           As an initial matter, Plaintiff claims to a refund based on the Insurance

7    Commissioner's Bulletins that ordered retroactive relief, or based on Insurance Code

8    section 1861.01(a), are foreclosed by current California law.  In *State Farm General*

9    *Insurance Co. v. Lara*, 71 Cal. App. 5th 148, 188–91 (2021) the California Court of

10   Appeals found that the Insurance Commissioner did not have the authority to order

11   insurance companies to issue retroactive refunds because section 1861 does not

12   operate retroactively, and the Commissioner's authority to alter rates is therefore only

13   prospective.[1]  However, this decision does not preclude Plaintiff from seeking

14   damages for Defendant's allegedly unfair practice of failing to prospectively modify

15   the premium rate.

16          Defendant argues that charging the rate under the policy cannot be considered

17   unfair under the UCL because the rate was not only approved by the Insurance

18   Commissioner, but also because Defendant was required by law to charge that rate.

19   Defendant's argument differs from a claim of immunity under section 1860.1, which

20   has been rejected by numerous courts, because it does not assert that Plaintiff's claim

21   falls within the exclusive rate setting jurisdiction of the Insurance Commissioner.  *See,*

22   *e.g.*, *Rejoice! Coffee Co., LLC v. Hartford Fin. Servs. Grp., Inc.*, Case No. 20-cv-06789-

23   EMC, 2021 WL 5879118 (N.D. Cal. Dec. 9, 2021); *Day v. GEICO Cas. Co.*, 580 F. Supp.

24   3d 830 (N.D. Cal. 2022); *Boobuli's LLC v. State Farm Fire & Cas. Co.*, 562 F. Supp. 3d

25   469 (N.D. Cal. 2021); *Drawdy v. Nationwide Ins. Co. of Am.*, No. 2:22-cv-00271-JAM-

26

27   [1] In a similar vein, the court in *Torrez v. Infinity Insurance Co.*, No. 2:22-cv-05171-SVW-JC, 2022 WL
     6819848, at *3 (C.D. Cal. Oct. 11, 2022), found that the premium refund paid by an insurance company
28   pursuant to the Insurance Commissioner's Bulletins could not have been unfair because the rebate was
     not required by law under *Lara*.

1    KJN, 2022 WL 3020050, at *2 (E.D. Cal. July 29, 2022).  Rather, Defendant argues that

2    its conduct fell within the UCL's "safe harbor" which prohibits UCL claims where

3    another provision of law "'bar[s]' the action or clearly permit[s] the conduct." *Goldman*

4    *v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003).

5         The Court finds that Defendant's conduct was not "clearly permit[ted]" by law

6    despite the Insurance Commissioner's approval of the rate under the same logic as to

7    why section 1806.1 does not immunize claims premised on the application of

8    approved rates.  In assessing section 1860.1 claims, courts have distinguished

9    between claims that challenge "approved rates and rating factors" which are

10   authorized by the Insurance Commissioner – and would therefore fall within the

11   exclusive jurisdiction of the Insurance Commissioner – and claims that challenge

12   "the *application* of approved rates" – conduct which is not necessarily approved of or

13   regulated by the Insurance Commissioner.  *Rejoice! Coffee Co.*, 2021 WL 5879118, at

14   *4 (emphasis in original).   As a California court of appeal has observed, "[i]t is possible

15   for an insurance carrier to file with the [Department of Insurance] a rate filing and class

16   plan that [satisfies] all of the ratemaking components of the regulations, and still

17   results in a violation of the Insurance Code *as applied*.  Such a [situation] would not

18   involve a question of rates, but rather, it could easily involve the very separate, factual

19   question of how the components of the class plan are applied toward members of the

20   public." *MacKay v. Superior Ct.*, 188 Cal. App. 4th 1427, 1450 (2010) (quoting

21   *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968, 993 (2004), *as modified on*

22   *denial of reh'g* (Mar. 30, 2004)), *as modified* (Oct. 20, 2010), *as modified* (Oct. 22,

23   2010).

24        Similarly here, the Plaintiff is not challenging the rate approved of by the

25   Commissioner, but rather the Defendant's application of the rate in light of Plaintiff's

26   reduced operations due to the COVID-19 pandemic.  Because the Commissioner

27   does not approve how insurance companies apply the rates, the application of a rate

28   is not *per se* permitted by law.  Therefore, the Defendant's conduct in charging the

7

applied rate does not fall within the UCL's safe harbor for conduct clearly permitted by law.

Defendant next argues that Plaintiff has failed to state a claim because the UCL does not give courts a license to review the terms of a contract for fairness or to "rewrite" a contract.  *See Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008) *aff'd sub nom. Spiegler v. Home Depot USA, Inc.*, 349 F. App'x 174 (9th Cir. 2009).[2]  In *Spiegler*, the court dismissed a claim alleging that it was an unfair business practice for the defendant to charge the agreed-upon fixed price in the contract.  *Id.* at 1045–46.  The contract was for the installation of cabinets which set forth the price based on measurements taken by a sales professional dispatched to the plaintiffs' home.  *Id.* at 1041–42.  After the contract was signed and before the installation, a "measurement technician" was dispatched to the plaintiffs' home to confirm the measurements who found that less material was needed.  *Id.*  The plaintiffs alleged that the Defendant violated the UCL by failing to adjust the price based on the more accurate measurements.  *Id.* at 1045.  The court rejected this claim finding that the "UCL cannot be used to rewrite [ ] contracts or to determine whether the terms of [ ] contracts are fair."  *Id.* at 1046; *see also Searle v. Wyndham Internat., Inc.*, 102 Cal. App. 4th 1327, 1334 (2002) ("[T]he 'unfairness' prong of section 17200 'does not give the courts a general license to review the fairness of contracts." (citations omitted)).  However, in *Spiegler*, the court only reviewed the claim under the balancing test approach because the plaintiffs could not tether their claim to a public policy.

Here, Plaintiff similarly alleges that it was an unfair business practice for the Defendant to not adjust the contract based on the changed risk factors, despite

---

[2] At oral argument, Defendant contended that their argument has not been presented in the other similar pandemic insurances cases.  A review of the other cases confirms that courts have not had yet had an opportunity to address this issue in this context.  See, e.g., *Rejoice! Coffee Co., LLC v. Hartford Fin. Serv. Group, Inc.*, Case No. 20-cv-06789-EMC, 2021 WL 5879118 (N.D. Cal. Dec. 9, 2021); *Day v. GEICO Casualty Company*, Case No. 21-cv-02103-BLF, 2022 WL 179687 (N.D. Cal. Jan. 20, 2022); *Boobuli's LLC v. State Farm Fire & Casualty Co.*, 562 F. Supp. 3d 469 (N.D. Cal. 2021); *Drawdy v. Nationwide Ins. Co. of Am.*, No. 2:22-cv-00271-JAM-KJN, 2022 WL 3020050, at *2 (E.D. Cal. July 29, 2022).

having agreed to pay the contract price.  However, this Court is not reviewing the contract for general unfairness under the balancing test as the court in *Spiegler*. Instead, the Plaintiff has tethered their claim to a public policy.  Plaintiff alleges that Defendant engaged in an unfair business practice that violated the policy expressed in Proposition 103 by: (1) continuing to charge a rate that Defendant should have known produced an "excessive" rate of return in light of new circumstances and (2) by failing to conduct a reassessment of Plaintiff's exposure or notify Plaintiff about the opportunity to request a reduced premium.  The Court may assess whether this conduct violated the UCL without reviewing the contract terms for fairness or rewriting the contract.  Plaintiff has therefore sufficiently stated a claim under the unfairness prong of the UCL.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss as to Count Two insofar as it relates to the alleged failure to provide refunds, and otherwise DENIES the Motion to Dismiss to Dismiss as to Count Two.

## B. Unjust Enrichment

Plaintiff's other claim is that Defendant was unjustly enriched.  Defendant argues that this claim must fail because there is a contract that governs the rate of the premium obtained by defendant, and because Defendant's enrichment was not unjust.

There is no separate cause of action for unjust enrichment under California law; rather, unjust enrichment describes "the result of a failure to make restitution under circumstances where it is equitable to do so."  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) (quoting *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992)); *see also In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 967 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014).  Unjust enrichment is "synonymous with restitution," and an action seeking recovery for unjust enrichment is an action for restitution.  *See Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1314 (1989).  "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of

1  action as a quasi-contract claim seeking restitution.'"  *Astiana v. Hain Celestial Grp.,*

2  *Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del*

3  *Rey*, 223 Cal. App. 4th 221, 231 (2014)).

4          Restitution is a quasi-contract theory, which allows for "the return of the excess

5  of what the plaintiff gave the defendant over the value of what the plaintiff received,"

6  *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 174 (2000), where the

7  benefit to the defendant was conferred through "fraud, duress, conversion, or similar

8  conduct," *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004).  The "mere fact

9  that a person benefits another is not of itself sufficient to require the other to make

10  restitution."  *Dinosaur Dev.*, 216 Cal. App. 3d at 1315 (quoting *Marina Tenants Ass'n v.*

11  *Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986)).  There must be some

12  showing of wrongdoing in obtaining the benefit, "otherwise, though there is

13  enrichment, it is not unjust."  *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App.

14  3d 1415, 1422 (1988) (quoting 1 Witkin, *Summary of Cal. Law* (9th ed. 1987)

15  Contracts, § 97, p. 126).

16          Moreover, "[a]s a matter of law, a quasi-contract action for unjust enrichment

17  does not lie where express binding agreements exist and define the parties' rights."

18  *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151,

19  153 (2001); *see also Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App.

20  4th 194, 203 (1996).  Courts imply quasi-contracts for the equitable purpose of

21  ensuring that fair payment is made for services rendered or benefits conferred.  *Klein*

22  *v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012), *as modified on denial of*

23  *reh'g* (Feb. 24, 2012).  "However, it is well settled that there is no equitable basis for an

24  implied-in-law promise to pay reasonable value when the parties have an actual

25  agreement covering compensation. . . . When parties have an actual contract covering

26  a subject, a court cannot—not even under the guise of equity jurisprudence—substitute

27  the court's own concepts of fairness regarding that subject in place of the parties' own

28  contract."  *Id.* (quoting *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal.

1  App. 4th 1410, 1420 (1996)).  Thus, where there is an existing express contract, a party

2  may only bring a claim for restitution if  the contract is unenforceable, procured by

3  fraud, or otherwise inapplicable.  *See Rutherford Holdings*, 223 Cal. App. 4th at 231.

4        At the pleading stage, a plaintiff may plead inconsistent and alternative claims.

5  Though it is true that Plaintiff will not be able to recover on its restitution claim if there

6  is a valid enforceable contract governing the claims, at this point "[i]t would be

7  improper to exclude the quasi contract claim on the basis that it cannot co-exist

8  alongside a contract remedy because the Court has yet to determine whether a

9  contract remedy is available to Plaintiff."  *Professor Brainstorm, LLC v. Aronowitz*, No.

10  CV-0905644-RGK-SSX, 2009 WL 10675891, at *3 (C.D. Cal. Dec. 8, 2009).  In both

11  *Boobuli's* and *Rejoice! Coffee*, the Northern District of California allowed similar claims

12  to proceed despite those plaintiffs not expressly pleading that the contract was invalid

13  because there had not yet been a finding that a valid contract existed.  *Boobuli's*, 562

14  F. Supp. 3d at *487; *Rejoice! Coffee Co.*, 2021 WL 5879118, at *10.  Similarly, here,

15  although Plaintiff has not expressly stated that the policy is invalid or does not govern

16  the claims, the Court will allow Plaintiff's alternative claim to proceed at this stage.

17  Moreover, Plaintiff has sufficiently pleaded that Defendant's conduct was unjust by

18  pleading that the failure to adjust the rate or provide an opportunity to request an

19  adjustment was an unfair business practice.

20        Accordingly, the Court DENIES Defendant's Motion to Dismiss as to Count One.

21      **C.**    **Primary Jurisdiction Doctrine**

22        Defendant further requests that the Court dismiss Plaintiff's claims pursuant to

23  the primary jurisdiction doctrine because determining a fair rate of return on

24  insurance rates is a "'highly technical' inquiry that is uniquely within the Insurance

25  Commissioner's expertise." (Mot. at 24.)  Plaintiff contends that the primary

26  jurisdiction doctrine is not appropriate here because Plaintiff's "challenge is to

27  [Defendant's] application of approved rates, not to the rates themselves, and

28  therefore will not require the Court to partake in any complex calculations that would

1   require the expertise of the [Department of Insurance]."  (Opp'n at 23 (quoting *Blain v.*

2   *Liberty Mut. Fire Ins. Co.*, No. 22-CV-0970-AJB-DEB, 2023 WL 2436003, 2023 U.S. Dist.

3   LEXIS 40205, at *17 (S.D. Cal. Mar. 9, 2023).)

4           The primary jurisdiction doctrine is a "prudential doctrine under which courts

5   may, under appropriate circumstances, determine that the initial decision-making

6   responsibility should be performed by the relevant agency rather than the courts[,]"

7   *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002),

8   when the issues presented are "within the special competence of an administrative

9   body."  *Farley Transp. Co. v. Santa Fe Trail Transp. Co*, 778 F.2d 1365, 1370 (9th

10  Cir.1985) (quoting *United States v. W. Pac. R. Co.*, 352 U.S. 59, 63 (1956)).  The

11  doctrine "is designed to protect agencies possessing 'quasi-legislative powers' and

12  that are 'actively involved in the administration of regulatory statutes.'"  *Clark v. Time*

13  *Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) (quoting *United States v. Gen.*

14  *Dynamics Corp.*, 828 F.2d 1356, 1365 (9th Cir. 1987)).  There is "[n]o fixed formula" for

15  whether to apply the doctrine, *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075,

16  1086 (9th Cir. 2006), but application may be appropriate where it "will enhance court

17  decision-making and efficiency by allowing the court to take advantage of

18  administrative expertise" and "will help assure uniform application of regulatory laws."

19  *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1051 (9th Cir. 2000).

20          Where the court determines that an issue is within the agency's primary

21  jurisdiction, it may either "stay[ ] proceedings or dismiss[ ] the case without prejudice,

22  so that the parties may seek an administrative ruling."  *Clark*, 523 F.3d at 1114.  "There

23  is no formal transfer mechanism between the courts and the agency; rather, upon

24  invocation of the primary jurisdiction doctrine, the parties are responsible for initiating

25  the appropriate proceedings before the agency."  *Syntek*, 307 F.3d at 782 n.3.

26          To the extent that Plaintiff is challenging whether the return that Defendant

27  obtained was excessive and unfair, the Court would agree with Defendant and other

28  courts in this district that such a determination is a highly technical inquiry that should

12

1  be left to the special competence of the Insurance Commissioner.  *See Kurshan v.*

2  *Safeco Ins. Co. of Am.*, No. 2:22-cv-00225-DAD-AC, 2023 WL 1070614, at *6–7 (E.D.

3  Cal. Jan. 27, 2023); *Drawdy*, 2022 WL 3020050, at *3.  However, the Court is hesitant

4  to dismiss claims under the Primary Jurisdiction doctrine where it is unlikely that

5  Plaintiff will be able to obtain relief from the administrative agency.  "Where there is

6  no administrative remedy available, the doctrines of exhaustion and primary

7  jurisdiction do not apply."  *Nodleman v. Aero Mexico*, 528 F. Supp. 475, 488 (C.D. Cal.

8  1981); *see also Arizona ex rel. Goddard v. Harkins Admin. Servs., Inc.*, No. CV-07-

9  00703-PHX-ROS, 2011 WL 13202686, at *2 (D. Ariz. Feb. 8, 2011) (declining to dismiss

10  pursuant to the primary jurisdiction doctrine where there was no remedy for the party

11  to pursue with the administrative agency).  In light of the decision in *Lara*, it is unclear

12  whether the Insurance Commissioner has authority to provide relief for Plaintiff's

13  claims, and counsel for the Defendant was unable to point to a specific mechanism

14  that could theoretically provide Plaintiff with relief.

15  Moreover, as the Court has already determined that any claims based on the

16  failure to refund or the insufficiency of the refunds are precluded, the questions left for

17  the Court to address are whether Defendant's alleged failure to conduct a

18  reassessment of Plaintiff's exposure, or to notify Plaintiff about the opportunity to

19  request a reduced premium, constituted an unfair business practice or was unjust.

20  Any inquiry into the rate of return will be incidental to the Court's primary role of

21  interpretating state policy and its application to Defendant's conduct – a function

22  regularly carried out by courts.  *See In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d

23  1197, 1226 (N.D. Cal. 2014) (discussing the various tests for determining whether a

24  practice is unfair under the UCL).

25  Therefore, the Court will retain jurisdiction over Plaintiff's claims.

26  **D.   Request for Injunctive Relief**

27  Defendant separately moves to dismiss or strike Plaintiff's claim to injunctive

28  relief.  The Court DENIES this request as moot as Plaintiff is not seeking prospective

13

1  injunctive relief.  (*See* Opp'n at 25 n. 6.)

2  **IV.   Conclusion**

3       For the above reasons, IT IS HEREBY ORDERED that Defendant's Motion to

4  Dismiss is GRANTED in part and DENIED in part as follows:

5    1. Plaintiff's second claim for violation of the UCL is dismissed to the extent it is

6       alleging Defendant failed to provide refunds or provided insufficient refunds;

7    2. Plaintiff's second claim for violation of the UCL is retained to the extent Plaintiff

8       is alleging that Defendant's failure to adjust or reassess Plaintiff's rate, or

9       provide Plaintiff with an opportunity to request a reduced premium, was an

10       unfair business practice; and

11    3. Plaintiff's first claim for unjust enrichment is construed as a claim for restitution

12       and is retained.

13
14       IT IS SO ORDERED.

15  Dated:   __October 17, 2023__

16                                              Hon. Daniel J. Calabretta
                                               UNITED STATES DISTRICT JUDGE

17

18

19

20

21  DJC2 – 23cv00197.mtd

22

23

24

25

26

27

28